**In re IOWA OIL COMPANY, Debtor.**

**Iowa Oil Company, Plaintiff,**

**v.**

**T Mart Inc., Defendant.**

**Bankruptcy No. 03–00418.**

**Adversary No. 03–9058.**

United States Bankruptcy Court, N.D. Iowa.

Aug. 29, 2003.

Douglas M. Henry, Dubuque, IA, for Debtor/Plaintiff.

Steven E. Balk, Silvis, IL, for Defendant.

## ORDER RE MOTION FOR RELIEF FROM DEFAULT JUDGMENT

PAUL J. KILBURG, Chief Judge.

The above-captioned matter came on for hearing on July 24, 2003 pursuant to assignment. Debtor/Plaintiff Iowa Oil Company was represented by attorney Douglas Henry. Defendant T Mart, Inc. was represented by attorney Steven Balk. After the presentation of evidence and arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF THE CASE

The Court entered default judgment in this case more than 60 days after service of the summons with no answer or motion filed by T Mart. T Mart requests relief from the default judgment, asserting it never had notice of the action. It also asserts it has a valid defense to present.

### FINDINGS OF FACT

Debtor's complaint, filed April 10, 2003, seeks recovery of $101,538.97 under a Reimbursement Agreement assumed by T Mart. This agreement arises out of T Mart's assumption of Knox Corporation's interests in five locations where Debtor supplied motor fuel. Debtor alleges that T Mart debranded and ceased selling Mobil motor fuel at four of the locations, triggering an obligation to repay Debtor under the Reimbursement Agreement.

The record shows Debtor served the Summons and Complaint on T Mart by first class mail on April 11, 2003. In the absence of any answer or motion filed by T Mart, Debtor moved for default judgment. The Court entered Judgment by Default on June 23, 2003. T Mart filed its motion for relief from the default judgment on July 9, 2003.

At the hearing, Mr. Inderjit Mann testified. He is T Mart's Vice President in charge of real estate. He stated that both he and T Mart's President, Rohit Sharma, are designated to receive legal papers in their office. Mr. Sharma is also T Mart's registered agent. Mr. Mann testified that neither of them received notice of the adversary action. He checked T Mart's files and could not find a copy of the Summons and Complaint.

T Mart has had its offices at the same address for more than three years. This address, 8020 Durand Ave., Suite E, Sturtevant, WI 53177, is the address to which Debtor sent the Summons and Complaint. Debtor sent copies of the Summons and Complaint addressed to both T Mart, Inc. and to Registered Agent Rohit Sharma at that address.

Mr. Mann testified that T Mart had previously received unrelated legal documents by mail. He stated that T Mart has an unwritten office policy that legal notices would go to either him or to Mr. Sharma, after which they would be forwarded to an attorney in the appropriate state, with copies kept in the office. In the company's six-person office, the receptionist, Esmeralda, receives the mail and distributes it to the proper recipient. Mr. Mann testified that, to his knowledge, Esmeralda had never misplaced any legal documents before. Neither Mr. Sharma nor Esmeralda appeared as witnesses.

Debtor filed an Affidavit by Monica L. Kowal, a paralegal employee at the law firm of Debtor's attorney. It also offered to put Ms. Kowal on the stand for cross-examination, which T Mart declined. The affidavit states Ms. Kowal mailed copies of the Summons and Complaint on April 11, 2003 to T Mart and its registered agent. Copies of the envelopes, postmarked April

11, 2003, are included as Exhibit C attached to Debtor's Resistance. Ms. Kowal's affidavit states these pieces of mail have not been returned as undeliverable. Also, other copies of filings in Debtor's bankruptcy case have been mailed to the same address and have not been returned as undeliverable.

For the purposes of this Motion for Relief from Default Judgment only, the Court makes the following findings of fact without prejudice to further adjudication on the merits. Debtor had a ten-year contract with Knox Corporation, commenced in 1998, under which Debtor provided Knox with Mobil gasoline. As part of the contract, Debtor assisted Knox in receiving funds from Mobil for improvement of the five gas stations Knox was operating. Under a Reimbursement Agreement, Knox agreed to certain reimbursements to Debtor if it ceased selling Mobil gas. T Mart, Inc. assumed the contracts and all of Knox's obligations by a purchase agreement dated June 19, 2002. Debtor consented to the Assignment and Assumption Agreement between Knox and T Mart. Three days after it purchased Knox's stations, T Mart debranded and ceased selling Mobil gas at four of the locations. The fifth location was sold and rebranded BP. T Mart rebranded and began selling Phillips 66 gas at its four remaining locations. The parties appear to agree that $101,538.97 remains unpaid under the Reimbursement Agreement.

Mr. Mann testified that, at the time of T Mart's purchase of the Mobil stations from Knox, it intended to continue selling Mobil products. As an alternate plan, however, T Mart considered selling Phillips 66 products. Mr. Mann testified that a Mobil distributor told him, prior to closing on the sale from Knox, that there was trouble between Mobil and Debtor. Mr. Mann understood that Mobil was "squeezing"

Debtor, planning to cut Debtor off and not supply as much gas as before. He testified that T Mart really wanted to go with the Mobil brand, but "it looked like we couldn't." So, T Mart went with Phillips 66.

Debtor's Exhibit A is a Promissory Note between T Mart and Independent Oil/Molo Oil ("Molo") dated June 18, 2002, one day before T Mart closed on its purchase from Knox. In the Note, Molo agreed to pay T Mart the "total payoff amount" of $148,682.98 for the five locations "that are branded Mobil with Knox Corp. through Iowa Oil Company." Further, one location was to be sold and the other four locations were to be branded Phillips 66.

Debtor argues that Exhibit A shows T Mart never intended to brand the stations as Mobil stations. Within three days after T Mart closed its purchase from Knox, it changed its signs from Mobil to Phillips 66 and marketed Phillips 66 fuel. Debtor asserts T Mart gave it no notice it would debrand the stations or opportunity to cure. Mr. Mann stated that, to the contrary, he had a phone conversation with either Debtor or Mobil telling them of T Mart's debranding. T Mart alleges that it debranded because Debtor failed to supply fuel as required by its supply agreement.

Mr. Mann testified that by entering into the Assignment and Assumption of Contract Marketer's Agreement with Knox Corporation, Exhibit C of Debtor's Complaint, T Mart assumed all responsibilities Knox had toward Debtor. This assignment included the duty to reimburse Debtor for Mobil's advances to Knox if debranding occurred. Mr. Mann agreed that T Mart assumed the reimbursement duties but did not pay the defaulted amount as agreed, either to Debtor or to Mobil. He testified that T Mart received conflicting directives regarding who should be reimbursed, Mobil or Debtor. He testified that

if T Mart paid Debtor under the reimbursement agreement, Debtor would be liable to turn the funds over to Mobil. Because of Debtor's bankruptcy, however, Mr. Mann believed Mobil's right to receive the reimbursement funds has been or will be discharged. Thus, any payment by T Mart would benefit Debtor without Debtor being required to turn the benefit over to Mobil as the parties originally contemplated.

## CONCLUSIONS OF LAW

■ Decisions to grant or deny a motion to set aside default judgment are *within the sound discretion of the bankruptcy court. In re Jones Truck Lines, Inc.,* 63 F.3d 685, 686 (8th Cir.1995). Bankruptcy Rule 7055 incorporates Rule 55 of the Federal Rules of Civil Procedure. Rule 55 sets out the procedures for entry of default and judgment of default. Rule 55(c) states: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Reasons listed in Rule 60(b)(1) for relief from judgment, and made applicable to default judgments through Rule 55(c), include "mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1); *United States v. Harre,* 983 F.2d 128, 130 (8th Cir.1993). Alternatively, Rule 60(b)(4) permits the court to set aside a judgment that is "void." If a defendant is improperly served, a federal court lacks jurisdiction over the defendant, rendering a default judgment void under Rule 60(b)(4). *Printed Media Servs., Inc. v. Solna Web, Inc.,* 11 F.3d 838, 843 (8th Cir.1993). T Mart, as the defaulting party, has the burden to show the applicability of Rule 60(b)(1) or (b)(4). *See In re Papp Int'l, Inc.,* 189 B.R. 939, 944 (Bankr.D.Neb.1995); *Artmatic USA Cosmetics v. Maybelline Co.,* 906 F.Supp. 850, n. * (N.D.N.Y.1995).

## SERVICE OF SUMMONS AND COMPLAINT, RULE 60(b)(4)

■ T Mart asserts it did not receive notice of this adversary action prior to the entry of default judgment. Debtor asserts it properly mailed the Summons and Complaint as allowed by Bankruptcy Rule 7004(b)(3). It has long been settled that the law presumes that correspondence properly addressed, stamped and mailed was received by the individual or entity to whom it was addressed. *Arkansas Motor Coaches v. Commissioner,* 198 F.2d 189, 191 (8th Cir.1952); *Iowa Lamb Corp. v. Kalene Indus.,* 871 F.Supp. 1149, 1153 (N.D.Iowa 1994). Presentation of evidence of proper mailing invokes the presumption of delivery. *Iowa Lamb,* 871 F.Supp. at 1153.

■ While the presumption is a rebuttable one, it is a very strong presumption and can only be rebutted by specific facts. *Arkansas Motor Coaches,* 198 F.2d at 191. The presumption is not easily overcome by a mere affidavit to the contrary. *In re Borchert,* 143 B.R. 917, 920 (Bankr.D.N.D.1992). Some courts require clear and convincing evidence to overcome the presumption of delivery. *See United States v. Castro,* 243 B.R. 380, 383 (D.Ariz. 1999) (discussing 9th Circuit cases). Evidence of an objective nature going beyond the claimant's statement of non-receipt is necessary. *In re Williams,* 185 B.R. 598, 600 (9th Cir. BAP 1995). One court has stated that the presumption that the addressee of a properly addressed and mailed notice receives that notice may be rebutted by "direct" and "substantial" evidence. *In re Chicago P'ship Bd., Inc.,* 236 B.R. 249, 256 (Bankr.N.D.Ill.1999).

■ Debtor has presented evidence of proper mailing of the Summons and Com-

plaint. Ms. Kowal's affidavit and related attachments invoke the presumption of proper delivery to T Mart. T Mart has failed to present specific facts to rebut the presumption. Mr. Mann's testimony of nonreceipt is insufficient to overcome the presumption. T Mart has not presented evidence of an objective nature going beyond Mr. Mann's statement. The Court must presume that the Summons and Complaint Debtor mailed to T Mart and to Rohit Sharma as T Mart's certified agent were received by T Mart. Thus, T Mart was properly served as the defendant in this action. T Mart is not entitled to relief from judgment under Rule 60(b)(4).

### EXCUSABLE NEGLECT, RULE 60(b)(1)

When a party has failed to plead or otherwise defend against a pleading, entry of default under Rule 55(a) precedes grant of a default judgment under Rule 55(b). *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir.1998). Rule 55 provides for two steps before entry of a default judgment: (1) the moving party requests the clerk to enter the default under subsection (a) and (2) the moving party seeks entry of judgment on the default under subdivision (b). *Webster Indus. v. Northwood Doors, Inc.*, 244 F.Supp.2d 998, 1003 (N.D.Iowa 2003).

▆▆▆ Although the same factors are typically relevant in deciding whether to set aside entries of default and default judgments, most decisions hold that relief from a default judgment requires a stronger showing than relief from a mere entry of default. *Johnson*, 140 F.3d at 783. Rule 55(c) provides that the court may set aside an entry of default "for good cause shown". The court may set aside a default judgment "in accordance with Rule 60(b)", which defines the procedure for analyzing motions for relief from judgment. *Id.*;

*Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir.1996).

▆▆▆ Under Rule 60(b)(1), the court may grant relief from a default judgment because of "mistake, inadvertence, surprise or excusable neglect." The term "excusable neglect" in this rule "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The following rules are derived from *Pioneer*:

> First, excusable neglect encompasses both simple, faultless omissions and omissions caused by carelessness. The determination as to whether neglect is excusable is an equitable one, taking into account all relevant circumstances surrounding the party's omission. Factors to consider include (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.

*In re Payless Cashways, Inc.*, 230 B.R. 120, 138 (8th Cir. BAP 1999) (citations omitted), *aff'd* 203 F.3d 1081 (8th Cir. 2000). The court ought not to focus narrowly on the negligent act that caused the default. *Murray v. S.O.L.O. Benefit Fund*, 172 F.Supp.2d 1134, 1141 (N.D.Iowa 2001). "The inquiry is essentially an equitable one, and the [ ] court is required to engage in a careful balancing of multiple considerations." *Union Pacific R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 782 (8th Cir.2001). The existence of a meritorious defense continues to be a relevant factor. *Id.* at 783; *Johnson*, 140 F.3d at 784.

■ Where the defaulting party's negligence involves only a minor mistake, the other equitable considerations are entitled to significant weight in determining whether relief under Rule 60(b)(1) should be granted. *Union Pacific,* 256 F.3d at 783. The Eighth Circuit distinguishes between careless conduct by a defaulting party and contumaciousness or intentional flouting or disregard of the court and its procedures. *Johnson,* 140 F.3d at 785; *United States v. Harre,* 983 F.2d 128, 130 (8th Cir.1993) (distinguishing between a marginal failure to comply with time requirements and willful violations of court rules).

■ The entry of default judgment is not favored by the law and "should be a rare judicial act." *In re Jones Truck Lines, Inc.,* 63 F.3d 685, 688 (8th Cir.1995). "[Rule 60(b)] authorizes an extraordinary remedy that allows a court to preserve the delicate balance between the sanctity of final judgments and the incessant command of a court's conscience that justice be done in light of all the facts." *Hoover v. Valley West D M,* 823 F.2d 227, 228 (8th Cir.1987). There is a judicial preference for adjudication on the merits. *Johnson,* 140 F.3d at 784.

## CONCLUSIONS

■ this case, Debtor did not undertake the first step under Rule 55(a), a request to the clerk to enter the default. The Court could analyze the instant motion under the "good cause" standard relating to entry of default. *See Johnson,* 140 F.3d at 783. This lower standard analyzes the same factors as the "excusable neglect" standard of Rule 60(b)(1) applied to relief from default judgments. As the Court determines that T Mart has met its burden to show its failure to file an answer or motion is the product of excusable neglect, it need not apply the less burdensome "good cause" standard.

The only reason T Mart proffers for failing to timely file a motion or answer in this action is that it did not receive the Summons and Complaint. As discussed above, the law presumes T Mart received the mailing. Its failure to respond to notice it presumably received is not explained in the record. The Court will assume the notice was either lost or ignored. This is arguably the result of inadequate, unwritten office policies regarding the treatment of legal notices. Nothing in the record indicates that T Mart's failure to respond was attributable to contumacious conduct or willful failure to follow court rules.

[20] ■ has not identified any significant danger of prejudice to it if the default judgment is vacated. Prejudice is not found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits. *See Johnson,* 140 F.3d at 785. There is no indication in the record that the delay will lead to loss of evidence or increased difficulties in discovery. The delay in this case is not lengthy. Debtor served the Summons and Complaint on T Mart on April 11, 2003 and moved for default judgment on June 18, 2003. Default judgment was entered on June 23, 2003. T Mart moved for relief from default judgment two weeks later, on July 7, 2003.

[21] ■ the existence of a meritorious defense is also a relevant factor, the Court acknowledges T Mart's allegations that it was entitled to debrand from Mobil based on Debtor's inability to supply fuel as required by the parties' contracts. The Court need not conduct a mini-trial to determine the validity of T Mart's defenses in considering relief from the default judgment. Rather, the issue is whether the proffered evidence would permit a finding for T Mart. *See Johnson,* 140 F.3d

at 785. T Mart is essentially defending a breach of contract with an allegation that Debtor breached first. It is basic contract law that this type of defense can be successful. The Court declines to address T Mart's argument that it is not liable to Debtor because Debtor is no longer liable to funnel T Mart's reimbursement funds to Mobil, though the Court notes that this argument may well fall within the long established legal maxim *"Res inter alios acta."*

In summary, there is a present legal climate which favors trials on the merits. Judgments entered by default are in disfavor. Taking into account all relevant circumstances, the Court concludes T Mart's Motion for Relief from Default Judgment should be granted under Rule 60(b)(1) for excusable neglect. T Mart's failure to timely file an answer or motion in response to Debtor's Summons and Complaint is careless or negligent. Considering the factors set out in *Pioneer,* in these circumstances T Mart has met its burden to prove excusable neglect.

## CONDITIONS ON RELIEF FROM DEFAULT JUDGMENT

 Relief from judgment may be conditioned to rectify any prejudice suffered by the nondefaulting party as a result of the default and subsequent reopening of the litigation. *Powerserve Int'l, Inc. v. Lavi,* 239 F.3d 508, 515 (2d Cir.2001); *Glynn v. Roy Al Boat Mgmt. Corp.,* 57 F.3d 1495, 1505 (9th Cir.1995). Under Rule 60(b), relief from a judgment is to be "upon such terms as are just." Fed. R.Civ.P. 60(b); *see* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2857 (2d ed.1987) (updated by 2003 pocket part). The court has discretion to impose such conditions as it deems fit, with the defaulting party then having the choice

of either complying with the conditions or allowing the judgment to stand. *Id.* Conditions most commonly imposed are that the defaulting party post a bond or reimburse the plaintiff for court costs and attorney's fees incurred because of the default. *In re Ireco Indus., Inc.,* 2 B.R. 76, 85 (Bankr.D.Or.1979); *see Coon v. Grenier,* 867 F.2d 73, 79 (1st Cir.1989) (remanding to vacate default judgment, conditioned on payment of $900 to offset estimate of plaintiff's reasonable fees and costs to secure default judgment); *In re BN1 Telecomm., Inc.,* 236 B.R. 238, 242 (Bankr. N.D.Ohio 1999) (conditioning relief from default judgment on posting of a bond to secure amount of default judgment).

 Upon consideration of the entire record and the file herein, the Court concludes that conditions should be placed on T Mart's relief from default judgment. The Court estimates that Debtor's fees and costs for pursuing and defending the default judgment total at least $500. Furthermore, it is appropriate to have T Mart post a bond in the amount of the default judgment. Counsel for the parties indicated that there is little dispute about the amount due under the Reimbursement Agreement. Debtor is entitled to the security of a bond from T Mart in light of T Mart's lack of response to the complaint.

WHEREFORE, T Mart Inc.'s Motion for Relief from Default Judgment is GRANTED.

FURTHER, the Default Judgment entered herein on June 23, 2003 is vacated subject to certain conditions.

FURTHER, relief from the default judgment is conditioned upon the following occurring *on or before September 12, 2003:*

1. T Mart Inc. shall file a responsive pleading or motion.

2. T Mart Inc. shall post a bond or equivalent security in the amount of the default judgment ($101,538.97).

3. T Mart Inc. shall pay Iowa Oil Co. $500, which approximates the fees and costs to Iowa Oil for obtaining and defending the default judgment.